UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL GUARDIAN RISK
RETENTION GROUP, INC.,

    Plaintiff,

v.

CENTRAL ILLINOIS EMERGENCY
PHYSICIANS, LLP, PRICE P. OMONDI, M.D.
and ROBERT VENABLE, M.D.,

    Defendants.

                                           /

File No. 1:06-CV-247

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This matter is before the Court on a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) by Defendants Price P. Omondi, M.D. and Robert Venable, M.D. ("Defendants"). Defendants are licensed physicians in Illinois who are insured by Plaintiff National Guardian Risk Retention Group, Inc. ("National Guardian"). *See* Exhibit A, Pl.'s Compl. (Docket #1). National Guardian issued the insurance policy to co-defendant Central Illinois Emergency Physicians, LLP ("Central Illinois"). Defendants are partners in the Central Illinois partnership. National Guardian filed the present declaratory judgment action to determine the rights and obligations under the terms of the insurance policy. The principal dispute between the parties is whether, under the policy, the "per Occurrence" or the "Annual Aggregate" limit applies to a medical malpractice action filed against Defendants.

In this motion, Defendants argue that the convenience of the witnesses and parties, the cost of securing witness testimony, the higher congestion in the Western District of Michigan, the Illinois public's interest in the controversy, and the familiarity with the law weigh in favor of a transfer of venue to the United States District Court for the Central District of Illinois.  Central Illinois and Plaintiff National Guardian are opposed to the transfer.  National Guardian argues that the convenience of witnesses, the Michigan public's interest in the dispute, and the relative familiarity with the law weigh against the transfer of venue.  For the reasons stated below, the Court denies Defendants' motion to transfer venue to the Central District of Illinois.

I.

National Guardian is an insurance company incorporated under the laws of Hawaii. National Guardian's principal place of business is also in Hawaii.  Central Illinois is a partnership organized and existing under the laws of the State of Michigan, with its principal place of business also in Michigan. Master Partnership Agreement, Exhibit C, Pl.'s Res. Br. (Docket #9).  The partnership's managing partner, James M. Johnson, M.D., is also located in Michigan. On June 1, 2001, Dr. Omondi became a physician partner with Central Illinois through the execution of a physician partnership agreement.  On November 1, 2003 Dr. Venable also executed a physician partnership agreement with Central Illinois, and became a physician partner.  Both Defendants are insured through the policy issued by National Guardian to Central Illinois.

2

The insurance policy was issued to Central Illinois by National Guardian in January 2003. The policy is a standard medical professional liability insurance policy that provides coverage to the insured physicians for sums which the "Insured is legally obligated to pay as Damages because of Injury from an Occurrence . . . suffered by any person arising out of the rendering of or failure to render Medical Professional Services . . ." Exhibit A, Pl.'s Compl. (Docket #1). The policy contains two limits of liability that are relevant to this dispute, a $1,000,000 "per Occurrence" limit and a $3,000,000 "Annual Aggregate Limit." The parties agree that their dispute is focused on whether the "per Occurrence" limit or "Annual Aggregate" limit applies in this case. The parties also agree that resolution of this issue turns on whether the medical treatments provided to the decedent are considered one "occurrence." The policy defines "occurrence" as:

> a Medical Professional Service or a series of interrelated Medical Professional Services rendered by an Insured, causing Injury to third party persons which is neither intended nor expected from the standpoint of an Insured. A series of related medical treatments to the same person shall be considered one Occurrence regardless of (1) the number of Claims or Suits brought and (2) the number of Insureds named in such Claims or Suits.

Exhibit A, Pl.'s Compl.

The need for insurance coverage and the subsequent dispute between the parties arises out of the medical treatment and death of Timothy Gillespie ("decedent") while under Defendants' care at St. Mary's Hospital in Decatur, Illinois. Decedent's spouse filed a wrongful death suit in Illinois state court alleging that Defendants provided negligent medical care (the "underlying action"). In light of the underlying action, National Guardian filed the

present declaratory judgment action seeking a determination of the rights and obligations under the insurance policy.

II.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The moving party bears the burden of proof on a motion to transfer under § 1404(a).  *See e.g., Steelcase, Inc. v. Smart Tech., Inc.*, 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004) (Quist, J.).  In evaluating the motion, the Court has broad discretion to grant or deny the request and must determine: (1) whether the action could have been brought in the proposed transferee district; (2) whether a transfer would promote the interests of justice, and (3) whether a transfer would serve the parties' and witnesses' convenience.  *See IFL Group Inc. v. World Wide Flight Service, Inc.*, 306 F. Supp. 2d 709, 712 (E.D. Mich. 2004).  The parties agree that the Central District of Illinois has personal jurisdiction over the Defendants and that the case could have been brought in Illinois.  Thus, the Court will move onto the second and third prongs of the analysis.

The Court must look at a number of factors when evaluating the interests of justice and convenience of the parties and witnesses including: (1) convenience of the parties and witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, (5) the interests of justice, (6) the relative congestion in the courts

of the two forums, (7) the public's interest in having local controversies adjudicated locally, (8) the relative familiarity of the two courts with the applicable law, (9) the plaintiff's original choice of forum, and (10) whether the parties have agreed to a forum selection clause. *Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002) (McKeague, J.). *Steelcase, Inc.,* 336 F. Supp. 2d at 719-20.

1.      *Convenience of Parties and Witnesses*

Defendants argue that this factor weighs in favor of a transfer to the Central District of Illinois because both they and the other hospital personnel that treated decedent are located in Decatur, Illinois, 53 miles from the Central District of Illinois courthouse. Defendants contend that in order to determine whether there is one or multiple "occurrences" under the terms of the insurance policy, the Court must determine whether decedent's medical treatments were "related." Defendants assert that this issue requires testimony from Defendants and other hospital personnel. In response, National Guardian attempts to show that decedent's medical treatments are "related" as that term is construed under Michigan law. National Guardian also notes that its claim handlers are located in Michigan and would be required to travel to Illinois in the event of a transfer.

National Guardian's attempt to demonstrate that the treatments were "related," essentially the merits of this case, is premature, however, it does highlight the relevant dispute in this case. This case hinges on the interpretation of the terms of the insurance policy issued by National Guardian to Central Illinois. Such a determination is based on the

5

parties' interpretation of the contract. While the hospital personnel may have a material role in the underlying malpractice action, their materiality to the interpretation of the insurance policy is limited. Moreover, because the parties do not appear to dispute the care given to decedent, the necessity of the hospital personnel's testimony is not readily apparent to this Court. In short, Defendants have failed to show the materiality of these witnesses to the interpretation of the insurance policy. *Viron Int'l Corp.*, 237 F. Supp. 2d at 816 (holding that convenience of the parties and witnesses was "a wash," where the parties failed to show which witnesses were material to the litigation); 17 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 111.12[1][f][v] (Matthew Bender 3d ed.) ("[B]oth parties should submit specific information on [the topics of each witnesses' testimony] in order to indicate which *material* witnesses will be inconvenienced.") (emphasis in original).[1] Because the hospital witnesses have little relevance to the interpretation of the insurance policy, this factor weighs neither for or against transfer.

2.      *Accessibility of Sources of Proof*

Defendants essentially argue that the hospital witnesses are the main sources of proof. Consequently, they argue transfer to the Central District of Illinois would make access to such sources easier. As discussed above, these witnesses have only limited relevance to the

---

[1] As for National Guardian's reliance upon its claim handlers, because these witnesses are closely aligned with the insurance company they are presumed to be willing to testify anywhere despite the inconvenience of the forum. MOORE'S FEDERAL PRACTICE § 111.13[1][f][iii] (collecting cases).

6

determination of the rights and obligations under the insurance policy and do not weigh heavily in this factor either. This argument also overlooks the fact that the policy at issue in this case was entered into in Michigan and is held by a Michigan partnership. Moroever, according to Central Illinois, the proofs surrounding the negotiation of the policy are held entirely in Michigan.

National Guardian also notes that its own offices contain documents related to the policy. Because the meaning of the policy turns on the parties' interpretation of the agreement, the documents and proofs held by National Guardian and Central Illinois are highly relevant to this case. National Guardian also indicates that it would have relative ease of access to these sources of proof wherever the case proceeds. Decedent's medical records are in Illinois, while the insurance contract records are in Michigan. In light of the numerous convenient methods for transporting documents, neither Michigan or Illinois proves more accessible to documentary forms of proof. *See Viron Int'l Corp.,* 237 F. Supp. 2d at 817. Therefore, this factor weighs neither in favor or against transfer.

3.   *Costs of Securing Testimony from Witnesses*

Defendants again point to the close proximity of hospital personnel to the Central District of Illinois courthouse. They assert that the costs of bringing such witnesses to Michigan weigh in favor of transfer to Illinois. National Guardian does not make any arguments specifically addressing this factor, but it can be inferred that a move to the Central District of Illinois would increase the cost of securing the testimony of the claim handlers

7

who live and work in Michigan. Thus, a transfer from the Western District of Michigan to the Central District of Illinois would merely shift the cost from one party to the other.

The Court must also consider the costs to the parties from potentially uncooperative witnesses. Individuals who reside more than 100 miles away from the forum Court may not be compelled to testify. FED. R. CIV. P. 45(e). Thus, in the event some of Defendants' witnesses refuse to testify, they will be beyond the subpoena power of this Court. Defendants, however, bear the burden of proof in this motion and fail to offer specific information about the materiality of the witnesses to the issues presented in this case. Moreover, "[t]here is no reason why the testimony of witnesses could not be presented by deposition." *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1138-39 (6th Cir. 1991). The Defendants have failed to carry their burden of showing that staying in Michigan will increase the cost of securing witness testimony. This factor weighs neither in favor or against transfer.

4. *Practical Problems Associated with Trying the Case in the Least Expensive and Most Expeditious Fashion*

Defendants do not assert any new arguments that are not addressed in other factors of the analysis. National Guardian also fails to offer any additional arguments under this factor. Thus, this is not a factor in the Court's decision.

5. *Interests of Justice and Relative Congestion*

Defendants identify a speedy trial and relative congestion as reasons favoring transfer to the Central District of Illinois. They rely on statistics from each district court which, they

contend, show that the relative congestion in the Central District of Illinois is less than that of the Western District of Michigan. The Western District of Michigan had 405 filings per judgeship in 2005 compared with 283 in the Central District of Illinois. Exhibits B and C, Defs.' Supp. Mem. (Docket #8). Defendants also note that, in 2005, the Central District of Illinois completed more trials per judgeship than the Western District of Michigan. Exhibits B and C, Defs.' Supp. Mem. Accordingly, they argue that the litigants are more likely to receive a speedy trial in Illinois. Defendants, however, fail to note that there is little difference in the time from filing to disposition of a civil case between the two courts. Exhibits B and C, Defs.' Supp. Mem. Moreover, the median time of civil trials is longer in the Central District of Illinois. Exhibits B and C, Defs.' Supp. Mem. Thus, although this Court may have more cases per judgeship, there does not seem to be a significant delay in the disposition of civil cases. Nevertheless, this district is operating with only one active judge. Consequently, adjudication may take longer than normal.

The Court also notes that the insurance policy has strong ties to Michigan. The policy was issued to a Michigan partnership. The Defendants freely joined the partnership knowing full well that Central Illinois is organized under the laws of Michigan and located in Traverse City, Michigan. *See* Exhibits D and E, Pl.'s Res. Br. Accordingly, while the relative congestion of the two courts may slightly favor a transfer to the Central District of Illinois, Defendants have failed to show that a transfer would be in the interest of justice.

9

7.	*Public's Interest in Local Controversies*

Defendants contend that there is no public interest in the State of Michigan, but that there is a significant public interest in Illinois. The plaintiff in the underlying action and the decedent are from Illinois. The defendant doctors and the defendant hospital in the underlying action are located near Decatur, Illinois, within the Central District of Illinois. The events leading to the underlying action took place in Illinois. Thus, Illinois has a significant interest in the underlying malpractice action. National Guardian asserts in response that Michigan has an interest in this case because it involves the insurance coverage of a Michigan partnership. The Michigan public certainly has an interest in litigation involving Michigan partnerships such as Central Illinois, which operate under Michigan law. Further, the Michigan public has an interest in the interpretation of a Michigan insurance policy.

Defendants, once again, place too much reliance on the underlying action. While the Illinois public has an interest in medical malpractice occurring in that state, it has little interest in an insurance coverage dispute involving a Michigan partnership and insurance policy. This case merely involves the interpretation of an insurance policy, which has no connection to the State of Illinois aside from the fact Defendants joined the Michigan partnership. As such, the public interest in Illinois is not very significant and this factor weighs against transfer.

10

8.      *Relative Familiarity with the Law*

Defendants argue that the Michigan choice of law rules dictate that Illinois law is applicable to this case, citing an unpublished Michigan Court of Appeals decision. *Federal Insurance Co. v. Armada Corp.*, 2004 WL 1486050 (Mich. Ct. App. July 1, 2004). Based on this assumption, they argue that transfer to the Central District of Illinois is appropriate where the court would be more familiar with Illinois law. National Guardian agrees that the Michigan choice of law rules will apply, but disagrees that Illinois substantive law will apply to this case. Instead, National Guardian asserts that Michigan substantive law will apply.

The parties are correct to the extent that Michigan choice of law rules will apply whether transferred or not. *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 611 (6th Cir. 2001) (holding that when a case is transferred pursuant to 28 U.S.C.§ 1404(a), the Court must apply the choice of law rules of the transferor forum state). Thus, the forum court will apply the substantive state law it believes is warranted under the Michigan choice of law rules. It is not necessary at this time, however, to determine which state law applies. Neither side argues that there is a significant difference between the two states, with regard to insurance contract law. To support a transfer, the difference in law needs to be complex enough to warrant a move to a forum which is more familiar with the law of the state in which it sits. *See Scheidt v. Klein*, 956 F. 2d 963, 965 (10th Cir. 1992) (holding that, in light of the "relative simplicity" of the fraud and contract issues presented in the case, the familiarity with law factor was not a significant concern). A brief review of the law

11

governing insurance contracts in Michigan and Illinois does not reveal any significant difference or complexity. Michigan courts interpret an insurance policy in the same manner as any other type of contract. *See Rory v. Continental Ins. Co.*, 473 Mich. 457, 461, 703 N.W.2d 23, 26 (2005). Under Illinois law, the rules governing interpretation of an insurance contract are substantially similar. *See e.g. Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). Moreover, both jurisdictions give contractual language its plain and ordinary meaning. *See St. Paul Fire & Marine Ins. Co. v. Ingall*, 577 N.W.2d 188, 191 (Mich Ct. App. 1998); *United States Fire Ins. Co. v. Schnackenberg*, 429 N.E.2d 1203 (Ill. 1981). Therefore, this factor does not support transfer.

9.    *Plaintiff's Choice of Forum*

Defendants note that National Guardian's choice of forum is not its state of residence. As a result, they argue the choice is given less weight. This argument is in accord with decisions of this circuit. *Central States Welfare Fund v. Guarantee Trust Life Ins. Co.*, 8 F. Supp. 2d 1008, 1010-11 (N.D. Ohio 1998) (holding that because the plaintiff's choice of forum was not its home forum, the choice was given the same weight as the other venue transfer factors). The plaintiff's choice of forum is also given less weight when the operative facts of the lawsuit occurred in another forum. MOORE'S FEDERAL PRACTICE § 111.13[1][][iii] (collecting cases). In the case at hand, operative facts occur both in Illinois and Michigan. The insurance policy was issued to a Michigan partnership and presumably the acts to form the contract also occurred in Michigan. The underlying action arose from

medical treatment in an Illinois hospital. As discussed above, given that this case involves the determination of rights and obligations under an insurance policy, there is less focus on the facts of the underlying action and a greater emphasis on the interpretation of the language of the policy. Thus, the operative legal facts of contract formation in the State of Michigan outweigh the operative facts in Illinois. This factor weighs against transfer.

10.     *Forum Selection Clause*

There is no forum selection clause in this case.

### III.

Balancing the relevant factors in this case, it is clear that Defendants have failed to demonstrate that a transfer would serve the interests of justice and convenience of the witnesses and parties. Only one factor supports transfer to the Central District of Illinois. The remaining factors either weigh against transfer or are neutral. Therefore, Defendants' motion for transfer of venue is denied. An order will be entered consistent with this opinion.


Date:      July 10, 2006              /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE